UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

════════════════════════════════

KENNETH S. MOTYKA,

                         Plaintiff,

     v.                                                  **DECISION AND ORDER**
                                                         15-CV-54S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

════════════════════════════════


     1.     Plaintiff Kenneth S. Motyka challenges an Administrative Law Judge's

("ALJ") determination that he is not disabled within the meaning of the Social Security

Act ("the Act").  Plaintiff alleges that he has been disabled since October 14, 2011, due

to diabetes mellitus, diabetic neuropathy, obesity, plantar fasciitis, status-post left knee

arthroscopy, status-post pacemaker replacement, hypertension, and history of basal

carcinoma on the head and face.  Plaintiff contends that his impairments render him

unable to work.  He therefore asserts that he is entitled to Disability Insurance Benefits

("DIB") under the Act.

     2.     On October 15, 2011, Plaintiff applied for DIB, and the Commissioner

denied the application on December 16, 2011.  Plaintiff requested a hearing on January

11, 2012, and, pursuant to Plaintiff's request, ALJ Robert T. Harvey held a hearing on

March 13, 2013.   Plaintiff was represented by counsel at the hearing, where he

appeared in person and testified.   An impartial vocational expert also appeared and

testified at the hearing.  The ALJ considered the case *de novo*, and, on April 4, 2013, he

issued a decision denying Plaintiff's application for benefits.  On December 8, 2014, the

Appeals Council denied Plaintiff's request for review.  Plaintiff filed the current civil

action on January 16, 2015, challenging Defendant's final decision.[1]

3.    On September 8, 2015, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 5). On December 18, 2015, Defendant filed her own Motion for Judgment on the Pleadings. (Docket No. 9).  This Court took the motions under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

4.    A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.    "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  In re Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's

---

[1] The ALJ's April 4, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).   In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7.     This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in

original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.      While the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015. He then made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since October 14, 2011, the alleged onset date (R. at 20)[2]; (2) Plaintiff's diabetes mellitus, diabetic neuropathy, obesity, plantar fasciitis, status-post left knee arthroscopy, status-post pacemaker replacement, and history of basal carcinoma on the head and face constitute "severe" impairments within the meaning of the Act[3] (id.); (3) Plaintiff's impairments do not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 21); (4) Plaintiff retained the residual functional capacity ("RFC") to perform medium work with certain limitations[4] (R.

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ found that Plaintiff's hypertension and history of basal cell carcinoma on his head, face, and back to be non-severe impairments within the meaning of the Act.

[4] Plaintiff cannot work around heavy, moving, and dangerous machinery or in areas with unprotected heights; he cannot climb ropes, ladders, or scaffolds; he cannot work in areas where he would be exposed to cold, dampness, excessive sunlight, and electrical magnetic devices; and he has frequent limitations in his ability to balance and reach in all directions with the right upper extremity. (R. at 22.)

at 22); and (5) Plaintiff is able to perform his past relevant work as a police dispatcher (R. at 25).  Ultimately, the ALJ determined that Plaintiff was not disabled, as defined by the Act, at any time from October 14, 2011, through the date of his decision on April 4, 2013.  (R. at 26.)

10.    Plaintiff advances two challenges to the ALJ's decision.   First, Plaintiff argues that the ALJ's RFC for medium work is not supported by substantial evidence. Under the Act, medium work requires, *inter alia*, that an individual be able to stand or walk, off and on, for approximately six hours in an eight hour workday.  See 20 C.F.R. § 404.1567(c); SSR 83-10, 1983 WL 31251, at *6.  Plaintiff contends that this requirement is inconsistent with his diabetic neuropathy, both because the ALJ found it to be a severe impairment at Step Two and because, as Plaintiff testified, his diabetic neuropathy makes him unable to stand for long periods of time.  Plaintiff also contends that an RFC of medium work is inconsistent with the opinion of Dr. Robert Weisberg, the State Agency Review Medical Consultant, who found that Plaintiff can "stand and/or walk with normal breaks" for "at least two hours" in an eight hour work day.  (R. at 297.)

As an initial matter, "[a]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling:  the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."  McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)). Therefore, there is no inconsistency between finding that Plaintiff suffers from more than *de minimis* symptoms due to diabetic neuropathy, but that these symptoms would not interfere with his ability to stand or walk, off and on, for approximately six hours in an eight hour workday.  See, e.g., Zabala v. Astrue, No. 05 CIV. 4483 (WHP), 2008 WL 136356, at *3 (S.D.N.Y. Jan. 14, 2008), aff'd, 595 F.3d 402 (2d Cir. 2010) ("this Court finds that the ALJ's determinations that [plaintiff] suffered from a severe impairment and

5

was capable of performing work were not inconsistent").   And, as discussed in further detail below, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing Marcus, 615 F.2d at 27).   In this case, the ALJ found Plaintiff's testimony to be "credible, but not to the extent alleged," because it was not consistent with the medical record and Plaintiff's own testimony regarding daily activities.  (R. at 22.)

Nor is the ALJ's RFC determination inconsistent with the opinion of Dr. Weisberg, the State Agency Review Medical Consultant, who opined that Plaintiff can stand or walk "at least two hours" in an eight hour work day.   "[W]hen reviewing the medical evidence, the ALJ has the authority to select among conflicting opinions."   Pines v. Comm'r of Soc. Sec., No. 13-cv-6850-AJN-FM, 2015 WL 872105, at *3 (S.D.N.Y. Mar. 2, 2015).   And, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."   Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013).   As noted above, the ALJ's RFC finding for medium work requires standing or walking, off and on, for a total of approximately six hours in an eight hour workday.   SSR 83-10, 1983 WL 31251, at *6. Dr. Weisberg completed a form, which gave four options under the heading "stand and/or walk (with normal breaks) for a total of": (1) "less than two hours in an eight hour workday," (2) "at least two hours in an eight hour workday," (3) "about six hours in an eight hour workday," or (4) "medically required hand-held assistive device is necessary for ambulation."   (R. at 297.)   Dr. Weisberg checked the box indicating, "at least two

hours," presumably meaning that Dr. Weisberg intended to opine that Plaintiff is capable of standing and walking between two and six hours per workday.

The ALJ gave some weight to Dr. Weisberg's opinion, adopting Dr. Weisberg's findings that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; Plaintiff could not climb ladders, ropes or scaffolds; Plaintiff must avoid exposure to hazardous machinery and heights; and Plaintiff must avoid concentrated exposure to extreme cold and extreme heat, because these findings were consistent with the record as a whole.  (R. at 23.)  However, the ALJ properly gave less weight to the opinion the Plaintiff could stand and walk for some amount of time between two and six hours, because this opinion was not consistent with the remainder of the record. Moreover, as a reviewing examiner, Dr. Weisberg did not personally examine Plaintiff, and medical reports that are not based on personal observation are generally given less weight than reports from examining sources, 20 C.F.R. § 416.927, particularly where, as here, the nonexamining physician's opinion conflicts with the opinions of medical providers who do have the benefit of personal observation.

Indeed, Dr. Gautam Arora, who examined Plaintiff on December 25, 2011, at the request of the Administration, opined that Plaintiff's neuropathy resulted in only a "mild limitation of walking and standing for a long period of time."  (R. at 240.)  Dr. Arora found that Plaintiff had a normal stance and gait, can squat fully, and can walk on his heels and toes without difficulty.  (R. at 238.)  And, one year later on December 11, 2012, Dr. Michael A. Parentis, Plaintiff's orthopedic surgeon, opined Plaintiff was "on track and doing great" post left knee arthroscopy.  (R. at 354.)  The same day, Joseph Benes, a physical therapy assistant and certified strength and conditioning specialist,

stated that Plaintiff was "doing really well [and] walking really good." (R. at 356.) Thus, the ALJ properly gave less weight to Dr. Weisberg's opinion, as substantial evidence supports the RFC determination that Plaintiff is able to stand and walk six hours in an eight hour work day.

Plaintiff also argues that the ALJ's RFC finding does not account for Plaintiff's limitations arising from the side effects of his medication. Plaintiff contends that his ability to work is limited because he suffers from diarrhea due to two medications, Metformin and Novolog. In support of this, Plaintiff cites progress notes from his primary care physician, noting his diarrhea from Metformin. (R. at 222, 226, 254, 258, 262.) However, the progress notes cited by Plaintiff note diarrhea only as "past medical history." (Id.) According to the record, Plaintiff is no longer taking Metformin, and did not take it during the relevant period, from his onset date of October 14, 2011, through the date of the time of the ALJ's decision on April 4, 2013. (R. at 210, 226, 237, 275, 277, 279, 314, 317-318, 325, 328, 333-334, 336, 358, 361.) Plaintiff also testified that he experienced diarrhea several times a week as a side effect of Novolog (R. at 42), which the record indicates that Plaintiff began taking on May 7, 2012, and this prescription continues through the most recent note in the record on January 8, 2013 (R. at 317, 328, 336, 358). During this period, the record contains no notation that the Novolog caused diarrhea (R. at 318, 329, 337, 359), and indeed, Dr. Darren M. Caparaso, a treating physician, unambiguously stated that Plaintiff "reports no problem with Novolog." (R. at 317.) Because the record does not reflect Plaintiff's complaints, the ALJ did not err in concluding that the side effects were not disabling. See Brockway v. Barnhart, 94 F. App'x 25, 28-29 (2d. Cir. 2004) (rejecting plaintiff's argument that ALJ improperly ignored side effects of his medications in assessing RFC because the medical reports did not reflect such complaints).

Accordingly, this Court finds no inconsistency between the record and the RFC as determined by the ALJ.

11.    Second, Plaintiff argues that the ALJ's conclusions regarding Plaintiff's credibility as to the severity of the alleged symptoms are not supported by substantial evidence.   Specifically, Plaintiff contends that the ALJ erred by failing to consider Plaintiff's work history and consistency as evidence of credibility.   As noted above, while an ALJ "is required to take the claimant's reports of pain and other limitations into account . . . [he] is not required to accept the claimant's subjective complaints without question."   Genier, 606 F.3d at 49.   Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."   Id.   This requires a two-step process.   First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged."   Id.   If so, the ALJ must then consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record."   Id. (internal quotation marks omitted; alteration in Genier).   In the present case, the ALJ found Plaintiff's testimony "credible, but not to the extent alleged," because it was not consistent with the medical record and Plaintiff's own testimony regarding daily activities.  (R. at 22.)

"[A] good work history may be deemed probative of credibility."   Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); see also Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983).  However, work history is "just one of many factors" considered in assessing credibility.   Id.   In declining to fully credit Plaintiff's testimony as to the severity of his impairments, "the ALJ reasonably relied on contrary evidence in the record, including extensive testimony and treatment notes from numerous physicians" and Plaintiff's "own account of his participation in a range of daily activities."   Wavercak v. Astrue, 420 F.

App'x 91, 94 (2d Cir. 2011). As noted above, the medical records and opinions support the ALJ's conclusion that Plaintiff was capable of performing medium work with certain limitations. The ALJ relied on findings from Dr. Arora, Dr. Parentis, and physical therapy assistant Benes, that Plaintiff has only mild limitations walking or standing (R. at 240), and that Plaintiff was walking well following his left knee arthroscopy (R at 356). The ALJ also relied on the opinion of Dr. Michael J. Battaglia, a neurologist, who found Plaintiff's neurologic examination to be unremarkable other than findings of dense neuropathy, and that Plaintiff's symptoms are not "representative of significant serious or worrisome central nervous system or peripheral nervous system disorders" (R. at 210). Dr. Ravi Sinha, a metabolism and endocrinology specialist, stated that Plaintiff's diabetes mellitus has been controlled since June 21, 2011 (R. at 225, 228, 334, 338), and also noted that Plaintiff was negative for dizziness, tingling, sensory changes, and weakness, and that Plaintiff's vision was not blurred (R. at 220, 224, 334, 337). These opinions constitute substantial evidence contrary to Plaintiff's testimony as to the severity of his impairments.

The ALJ's conclusion is also consistent with Plaintiff's own account of his participation in a range of daily activities during the period in question, which include cleaning his home inside and out, mowing his lawn, clearing snow, cooking quick meals, weekly shopping with his wife, weekly breakfast outings with old co-workers, weekly outings with social groups, as well as pistol shooting and running model trains. (R. at 139-42.) See 20 C.F.R. § 404.1529(c)(3)(i) (noting that daily activities are a factor the ALJ considers relevant to a claimant's symptoms). Finally, although the ALJ did not discuss Plaintiff's work history in the credibility analysis, he did not ignore it entirely. To the contrary, the ALJ considered Plaintiff's prior work history when he concluded that Plaintiff's RFC allowed him to continue his career as a police dispatcher, as he had previously performed that job. (R. 26.) In light of this evidence, the ALJ committed no

error by not discussing Plaintiff's work history as part of his credibility assessment. Wavercak, 420 F. App'x at 94 ("That [plaintiff]'s good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.").

Nor is this Court persuaded by Plaintiff's argument that his subjective complaints have been consistent through the relevant period, and thus, the complaints should be fully credited. Consistency alone is not sufficient to establish a disability:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a). This District has stated that "the court 'must show special deference' to credibility determinations made by the ALJ, 'who had the opportunity to observe the witnesses' demeanor' while testifying." Lee v. Colvin, No. 13-CV-1151-JTC, 2015 WL 3505791, at *3 (W.D.N.Y. June 3, 2015) (quoting Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994)). "It is the function of the [ALJ], not [the Court], . . . to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983). Accordingly, this Court finds no error in the ALJ's credibility assessment.

12.     Having considered Plaintiff's challenges, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence. Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:   October 16, 2016
            Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
